ANTHONY L. HODGE *et al.*, Plaintiffs-Appellees, *v.* LEMAND MORTGAGE COMPANY, Defendant-Appellant.

Third District    No. 81-58

Opinion filed July 16, 1981.

Robert T. Park and Samuel S. McHard, both of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellant.

Dorothea O'Dean and Robert P. Boeye, both of Rock Island, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Lemand Mortgage Company appeals from the judgment of the Circuit Court of Rock Island County awarding plaintiffs Anthony Hodge, Elmer Hodge, and Gary Hodge $6,900 in their suit for a refund of loan processing fees paid to Lemand. Appeal is also taken from the court's denial of Lemand's counterclaim against the Hodges, seeking a commission on a loan obtained from another lender allegedly in violation of the contract between the parties herein. At the center of the case are two contracts between Lemand and the Hodges, both of which cover the Hodges' applications for mortgage financing on two construction projects they wished to build. The trial court concluded that Lemand did not process the applications and obtain satisfactory commitments within the 45 days given it in the contracts. Lemand, on this appeal, argues that the 45-day limit did not begin to run, since the Hodges failed to provide the necessary documentation to process the loan applications. The court also found that the Hodges did not violate their agreement to grant Lemand the exclusive right to obtain a commitment for permanent financing on one project when they obtained interim financing from another lender. Lemand, on appeal, argues that there was a breach of the agreement with the Hodges' action in obtaining interim financing elsewhere.

The facts in the record reveal that the Hodges operate a business known as Hodge Construction Company. The company constructs apartment buildings and other commercial buildings ranging in costs from $200,000 to $600,000. In the spring of 1980, the Hodges were introduced to persons at Lemand Mortgage Company through their commercial real estate agent, Jeff Erinberg. Erinberg provided Anthony Hodge with a copy of a letter from Lemand, dated November 7, 1980, in which Lemand listed their documentation requirements for mortgage loan applications. The Hodges were interested in obtaining permanent mortgage financing on two construction projects they had planned. The copy of the letter from Lemand stated that they would need the following: an executed

application, a current MAI appraisal, title insurance, a complete set of plans, tax returns of the mortgagors, a new financial statement, a survey, the appropriate corporate resolutions, a zoning compliance letter, indebtedness information, and contractors' bids.

Thereafter, on March 11 and 12, 1980, Lemand and the Hodges entered into two contracts, entitled "Exclusive Application for Mortgage Financing." One of the loan application contracts covered a 12-plex apartment building in Rock Island, specifying that the application was for a first mortgage, permanent financing in the amount of $340,000, with interest at 13 3/8%, and a 25/15 term. The other loan application contract covered a proposed office building in Rock Island, specifying a first mortgage, permanent financing in the amount of $350,000, with interest at 13½%, on a 12/15 term. Each loan application contract contained the following provision:

"The UNDERSIGNED hereby grant you the exclusive authorization for a period of 45 days after receipt of all documents, forms, requested services, and other information to be made a part of this exclusive application, to obtain a commitment from an investor and issue a mortgage covering the hereinafter described property in the principal sum of [$340,000 and $350,000, respectively] or 75% of an approved MAI appraisor, whichever is less. The undersigned agrees to execute all documents and submit any additional data required by you or by your investor within 15 days of written request, except for the MAI appraisal."

The contracts also contained the following provision:

"In the event that the undersigned makes application or accepts a commitment from any other source during the effective period of this exclusive agreement, a commission in the amount of Two (2) Percent of the loan shall be deemed reasonable and proper to have been earned by herein-named Financial Agent, and shall be due and payable immediately."

The loan application contracts were executed by the Hodges and accepted by Lemand on March 11 and March 12, 1980. On March 12, 1980, the Hodges also gave Lemand a check for $6,900, covering the loan processing fees on the two loans. The following contract provision with respect to the 1% fee is found in each contract.

"A loan processing fee of [$3400 and $3500 respectively] is enclosed with this application. The undersigned acknowledges that if a commitment is issued on the terms required or any modification acceptable to the undersigned, this deposit shall be immediately earned by the lender and credit to lender's fees. In the event the herein-named financial agent or the investor fails to tender a commitment within the stated period, this loan processing

fee is to be fully refunded, less all costs arising from this application, without interest, to the undersigned. * * *."

At trial, the Hodges testified that they supplied everything requested of them by Lemand during the first meetings with Lemand personnel on March 11 and 12, when the contracts were signed and the fee paid. Anthony Hodge testified that all documents and submissions to be supplied by the Hodges were supplied to Lemand during the first meetings in mid-March. He further testified that during those meetings Dan Andreola, president of Lemand Mortgage Company, informed them that he would take care of getting the MAI appraisal that was needed, because he had friends in the business who could obtain the appraisal at lesser costs. This assumption by Lemand of the obligation to obtain the appraisal was corroborated by the testimony of plaintiff Gary Hodge. Anthony Hodge testified that subsequent to the execution of the contracts he made numerous calls to Andreola, inquiring about the progress on the loans for the projects. He testified that Andreola repeatedly told him that they were working on it, that there were no problems, and that it would only be a matter of days, maybe a couple of weeks. Andreola, in his testimony at trial, denied that he had initially agreed, on behalf of Lemand, to obtain the necessary appraisal.

Then, on May 1, 1980, Lemand sent a letter advising the Hodges that their applications had been approved, subject to appraisals being completed and other conditions to be set forth in a commitment that was to follow.

Further discussions concerning the loan applications occurred at a meeting between the parties and their attorneys on May 30, 1980, more than 45 days after the execution of the loan application contracts. Attending the meeting that day were Andreola, and the attorney for Lemand, as well as the three Hodges and their attorney. At the meeting, the parties went over two alleged commitments offered by Lemand to the Hodges. The first commitment, covering the proposed office building, was in the amount of $340,000, at 14½%, with interest rate adjustment every three years. The original application by the Hodges for the office building specified $350,000, at 13½% amortized over 25 years, with a 15-year balloon. In addition to the changes in these specifics, the proffered commitment contained a prepayment penalty clause not specified in the original loan application contract. Other additions and charges were also made part of the proffered commitment even though not specified in the loan application contract. As to the second loan, covering the apartment complex, the proffered commitment specified $300,000, interest at 14½%, with interest adjustment every three years. The original loan application contract specified $340,000, with fixed interest set at 13 3/8%. Other additions and conditions not part of the original contract were also

included in this commitment as well. At the meeting there was considerable discussion and disagreement concerning the commitments Lemand put forth. The Hodges expressed their doubts as to the ability of the Lemand Mortgage Company to furnish financing for the loan applications.

As a result of the meeting and their discussions, Lemand, through Dan Andreola, agreed to furnish the Hodges' banker, Blackhawk State Bank, with the MAI appraisal and with a solid indication that Lemand had a viable commitment. The submissions to Blackhawk State Bank by Lemand were to be made before June 6, 1980. The Hodges indicated that if Lemand could perform by submitting those before June 6, 1980, then they were willing to renew negotiations. Lemand indicated that if they could not produce a satisfactory appraisal and convince Blackhawk Bank that it was a good commitment, then Lemand would return the money that was taken as a down payment, less expenses incurred. June 6 was the crucial date for keeping the negotiations open.

Neither the appraisal nor the submission with regard to the evidence of a viable commitment was made by Lemand to Blackhawk State Bank by June 6 or at any time thereafter. Subsequent thereto, on June 12, 1980, the attorney for the Hodges informed Lemand of their formal rejection of the proffered commitments.

On July 1, 1980, the Hodges obtained financing for the office building from Blackhawk Federal Savings and Loan of Rock Island. They had previously obtained interim financing on the apartment complex on March 19, 1980, from Blackhawk State Bank, in Milan.

In June 1980, after Lemand failed to meet the June 6 deadline agreed to by the parties, the Hodges filed the instant suit for a refund of their deposits, totaling $6,900, which they had paid to Lemand as processing fees on the two loans. The loan application contracts, which have been set forth in pertinent part previously, provided that Lemand would return the fee deposit if it failed to tender a commitment within the stated 45-day period. In their complaint, the Hodges contended that Lemand had failed to tender to them acceptable commitments within the 45-day time limit prescribed by the March 11 and 12 contracts. Lemand denied any failure on its part to perform in accordance with the agreement, arguing that the 45-day time limit on its performance had not started to run, due to the failure of the Hodges to supply it with the MAI appraisal, as per the initial letter from Lemand. Lemand also counterclaimed, claiming that the Hodges had violated the loan application contract when they obtained other financing for the apartment project on March 19, 1980. As noted above, the evidence indicated that the Hodges did obtain construction financing, in the amount of $242,500, from Blackhawk Bank on March 19,

1980. The financing was for the apartment complex and the term of the loan was two years.

The court, after hearing the evidence at trial, ruled that the Hodges were entitled to a refund of their processing fees, totaling $6,900, based upon Lemand's failure to furnish a satisfactory commitment within the 45 days specified in the parties' contracts. In so concluding, the court indicated its finding that the 45 days began to run when the loan application contracts were signed and accepted, being March 11 and 12, 1980. As to responsibility for submission of the MAI appraisal, a central element in Lemand's asserted defense, the court found that the Hodges had no such obligation to supply the appraisal, such requirement having been waived by Lemand. The court found that the submissions by the Hodges at the time the contracts were executed fulfilled their obligations under the contracts. The court also found that Lemand had not performed according to the contract, concluding that the alleged commitments tendered by Lemand on May 30, 1980, were not in conformity with the loan application contracts. Judgment ordering the refund was entered. As to Lemand's counterclaim, based upon the alleged breach of the contract by the Hodges when they obtained financing from Blackhawk State Bank, on March 19, the court found that no breach occurred, because the financing then obtained was interim in nature, whereas the financing covered by the loan application contracts with Lemand was permanent in nature. Accordingly, the court denied Lemand's counterclaim for a commission.

The first issue raised by appellant Lemand Mortgage Company is whether the court correctly concluded that the time for its performance, under the loan application contracts, began to run on March 11 and 12, when those contracts were executed and accepted. Each contract specified that Lemand was to have 45 days after receipt of needed documents in which to obtain a commitment from an investor to issue a specified mortgage to the Hodges. Lemand argues that its time for performance never began to run, since the Hodges failed to provide the MAI appraisal. The difficulty with their position, on appeal, is the trial court's clear conclusion, based upon the evidence, that the Hodges did not have an obligation to provide the appraisal.

■■ The court found that Lemand had waived that requirement and that the lack of the appraisal did not affect Lemand's time for performance under the contract. Both findings of fact by the trial court find support in evidence. Two of the plaintiffs testified that Dan Andreola, president of Lemand, informed them on or about March 12, 1980, that Lemand would obtain the appraisals necessary for the loan applications. Their testimony was disputed by Andreola, who denied any agreement that Lemand

would obtain the appraisals. The court was faced with conflicting evidence and a question of credibility. Resolution of such evidentiary matters is largely for the trial courts, and reviewing courts will not disturb findings of fact by the trial courts unless they are found to be contrary to the manifest weight of the evidence. (*People ex rel. Jolley v. Koeppel* (1969), 42 Ill. 2d 257, 259, 246 N.E.2d 247.) In the case at bar there is ample evidence in the record to support the court's conclusion that the obligation as to the appraisal had been assumed by Lemand at the time the contracts were executed. By the statements of Andreola to the Hodges, Lemand waived the requirement that they submit an appraisal, prior to performance by Lemand under the contract. The evidence in the record indicates that the Hodges supplied all they were required to submit, under the loan application contracts, when the contracts were executed on March 11 and 12, 1980. We find no adequate basis to reverse the court's findings on these questions.

■■ Given the findings, Lemand's 45-day limit for securing commitments pursuant to the contracts began to run as of the date the contracts were executed and accepted. Lemand did not secure the necessary commitments within the required 45 days. The only commitments proffered by them were clearly not in conformity with the specifications in the original contracts. In addition, they were submitted after the 45 days had already expired. Even so, the Hodges agreed to renew negotiations with Lemand, if it would submit an appraisal and show evidence of a viable commitment by June 6, 1980. Lemand agreed to do so, but failed to make the submissions agreed to by the parties. Under the circumstances, the Hodges properly and clearly rejected the unsatisfactory commitments on June 12, 1980. Lemand had more than 45 days in which to perform its obligation agreed to under the loan application contract, and it had failed to do so. Having failed to obtain a commitment, the Hodges were entitled to a refund of their loan processing fees, totaling $6,900, under the terms of the contracts providing for handling of that fee. The trial court correctly entered judgment for the refund.

Lemand's argument that the Hodges "delegated" their duty to obtain the appraisal to Lemand, and thus retained responsibility for its production, is strained and unpersuasive. There was no delegation of the duty by the Hodges to Lemand. The evidence supports the court's findings that the obligation was waived by Lemand, so far as the Hodges were concerned, and that it was assumed by Lemand. No delegation is involved. Nor does such action indicate that the Hodges therein waived the time limitations specified in the contract. There was no evidence supporting such a contention.

■■ The next issue concerns the Hodges' actions in obtaining interim financing from Blackhawk State Bank on March 19, 1980, to finance

construction costs on the apartment complex. Lemand argues that such action by the Hodges violated the loan application contract. The contract gave Lemand the exclusive authorization to obtain the permanent financing as specified in the loan application, and it also provided for a commission to Lemand if outside financing, in violation of the contract, was obtained by the borrowers. Lemand counterclaimed for a commission, based upon the financing obtained with the Blackhawk State Bank. The court denied the counterclaim, concluding that there was no breach of the loan application contract, in that the contract covered only permanent financing. The court found that the financing obtained by the Hodges from Blackhawk State Bank on March 19, 1980, was interim in nature, and thus outside the scope of the exclusivity provision in the loan application contract.

We agree with the trial court. It is well established in contract law that an instrument is to be construed most strongly against its author. (*Crest Builders v. Willow Falls Improvement Association* (1979), 74 Ill. App. 3d 420, 393 N.E.2d 107.) Herein, the author of the loan application contract was Lemand. That contract, covering the commitment on the apartment complex, specified expressly "permanent financing" in the amount of $340,000. Nothing was mentioned or stated in the contract with regard to shorter term, interim financing. Thus, by the contract, the Hodges agreed to refrain from seeking permanent financing from another lender during the 45 days given Lemand to come up with commitments. The evidence does not indicate that they breached their agreement with respect thereto. The Hodges did not seek or obtain permanent financing for the apartment complex while the contract was still in force. Their only action was to obtain interim financing, in the amount of $242,500, on a two-year loan, from Blackhawk State Bank. We find no error in the trial court's conclusion that such action was not violative of the loan application contract. We would note that the president of Blackhawk Bank testified at trial as to a conversation he had with all parties, by way of amplified telephone conversation, on May 30, 1980. He informed Lemand at that time that Blackhawk State Bank had provided interim financing on the apartment complex, but that it did not want the long-term portion. He stated that the project was already on their books, because the Hodges needed the money to complete it, and the Bank wanted to be paid off on the interim financing and were expecting Lemand to do that permanent financing. Further, the evidence indicates that the Hodges remained interested and desirous of permanent financing on both projects from Lemand, as per the original contracts, until June 6, 1980. At that time, Lemand failed to provide the appraisal and solid evidence of a commitment as it had agreed to on May 30, 1980. It was Lemand's failure to provide the satisfactory commitments in a timely fashion, and not the

arrangement for interim financing, that ended the parties' business concerning the projects. We find no breach of the loan application contract by the Hodges and no error in the court's denial of Lemand's counterclaim for a commission.

The judgment of the Circuit Court of Rock Island County is affirmed in its entirety.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.